**Genero T. MITCHELL, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 1999.

Decided March 31, 1999.

James L. McAneny, Harrisburg, for petitioner.

Joanna N. Reynolds, Harrisburg, for respondent.

Before COLINS, President Judge,
McGINLEY, J. and LORD, Senior Judge.

LORD, Senior Judge.

Genero T. Mitchell petitions this Court for review of an order of the Pennsylvania State Police Commissioner (Commissioner) denying him benefits pursuant to the Heart and Lung Act (Act), Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638.

The record reveals the following facts. Mitchell is a member of the Pennsylvania State Police. On January 12, 1996, while on-duty, and with his supervisor's permission, Mitchell went out to the parking lot to warm up his car, to avoid driving home in a cold vehicle at the end of his shift. While in the parking lot, he slipped on ice and injured his knee. As a result of this incident, Mitchell requested Heart and Lung benefits for January 13, 1996, to and including February 12, 1996.

After an administrative hearing, on February 4, 1998, an arbitrator issued a proposed report and recommendation in which he concluded that Mitchell was ineligible for benefits under the Act. On August 25, 1998, the Commissioner issued a decision accepting the arbitrator's conclusion that Mitchell was ineligible for benefits. This appeal followed.[1]

The issue presented in this case is whether Heart and Lung Benefits are payable to a state police officer who is injured on premises and while on duty, when leaving his post to warm up his car. Section 1(a) of the Act provides for full compensation to be paid to state police officers, as well as other expressly identified public service employees, who sustain temporary disabilities during the performance of their duties. Specifically, the Act provides as follows:

> Any member of the State Police Force ...
> *who is injured in the performance of his duties* ... and by reason thereof is temporarily incapacitated from his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.

53 P.S. § 637(a) (emphasis added).

The rules of statutory construction mandate that we strictly construe the phrase "in the performance of his duties." *Allen v. Pennsylvania State Police*, 678 A.2d 436 (Pa. Cmwlth.1996). Mindful of this standard, we conclude, for the reasons which follow, and as the Commissioner did, that Mitchell was not acting "in the performance of his duties" when he left his post while on-duty to warm up his car. A brief review of some decisions interpreting the Act will establish why we are unable to accept Mitchell's position that his injury is covered by the Act because it occurred during his shift and was a minor deviation from his obligations as a state police officer.

In *Allen*, recognizing the strict limits of the Act's coverage to police officers injured in performance of their duties, we concluded that the Act's benefits were not available to a

---

1. Our standard of review is to determine whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or an error of law was committed. *Brandt v. Pennsylvania State Police*, 159 Pa.Cmwlth. 66, 632 A.2d 986 (1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

state police officer who arrived early at his barracks and who was injured in the barracks locker room while preparing for his shift. In the face of the claimant's argument there that his injury, though occurring before his shift, nonetheless occurred during activities sufficiently related to performance of duty to be compensable, we stated:

> In the present case, we realize that the demarcation between preparing for duty and actually being on duty is somewhat tenuous. Nonetheless, based on a strict interpretation of the word "duty," we find that Claimant's actions in the present case do not fall within the parameters of that term for the purposes of the Act.

*Id.*, 678 A.2d at 438 (citations omitted).

More recently, we decided that an off-duty Pennsylvania State Police helicopter pilot who was injured while trying to stop and investigate suspicious persons on his own property was injured in the performance of his duties and therefore eligible for benefits. *Donnini v. Pennsylvania State Police*, 707 A.2d 591 (Pa.Cmwlth.1998). In a case decided the same day, we conversely found that an off-duty state police officer was ineligible for benefits when he was injured in an automobile accident while driving a State Police vehicle on return to his next shift. *Lee v. Pennsylvania State Police*, 707 A.2d 595 (Pa. Cmwlth.1998). In *Lee,* relying on the principles articulated in *Allen* and such cases as *Colyer v. Pennsylvania State Police,* 165 Pa. Cmwlth. 41, 644 A.2d 230 (1994) and *McCommons v. Pennsylvania State Police,* 165 Pa. Cmwlth. 280, 645 A.2d 333, *petition for allowance of appeal denied,* 539 Pa. 671, 652 A.2d 841 (1994),[2] and reiterating the same language employed in *Donnini,* we stated:

> The principle which we distill from these cases is that, in order for a claimant to be injured "during the performance of his duties," he must be injured as a result of

an event which requires or triggers *official police response.*

*Lee,* 707 A.2d at 598 (emphasis added).

Mitchell makes much of this Court's pronouncement, again found in both *Lee* and *Donnini,* of its wish "to make it clear that the principles which we articulate in this appeal are applicable to the injury of *an off-duty officer* and, of course, address only that factual circumstance." *Id.; Donnini,* 707 A.2d at 595 (emphasis in original). Mitchell would have us find that the fact he was on duty at the time of his injury is a *per se* distinction rendering him eligible for benefits. We do not think the Act's requirement of strict construction or the authority of *Lee* and *Donnini* warrant such a decision, for in both of those cases we also said that "[i]t is obvious that the statutory interpretation of the phrase 'injured in the performance of his[/her] duties' is an issue which is factually sensitive, and ... the principles which we articulate today may not be apposite under other circumstances." *Id.* Hence, the possibility permitted by *Lee* and *Donnini* is that the principles articulated therein *may be* apposite in a factual matrix such as this one, and we believe it is apt to apply one of those principles here—that is, that Mitchell's injury is not compensable because it did not result from an event which triggered or required an official police response.

We do not hold here, or even suggest, that a state police officer who is on duty is not covered by the Act unless his injury occurs during a police response, for an on-duty officer who is at his post and is at rest or "between" assignments is nonetheless at the ready, and therefore performing official duties. Our holding today is limited to situations where an on-duty state police officer is injured while deviating from those duties to perform a "personal mission," to borrow a term from workers' compensation law parlance.

---

2. In *Colyer,* we found that a state police officer suffering a psychiatric disorder triggered by an internal investigation of his handling of evidence was covered by the Act. We rejected the argument there that the Act was intended to benefit covered employees only when they were engaged in hazardous duties.

In *McCommons,* we held that a state police officer, injured in an automobile accident en route to a grievance meeting while on permitted administrative leave, was not, in his capacity as a union officer or joint committee member, injured in the performance of a police duty. We upheld the Commissioner's decision finding the claimant ineligible under the Act.

Were we to hold otherwise, we would create this anomalous result. An off-duty state police officer, on Pennsylvania State Police premises, preparing himself shortly before the beginning of his shift for the performance of his official duties, is not covered by the Act, *Allen;* yet a state police officer, on premises, preparing to *abandon* his official duties just before the end of his shift, is the recipient of the Act's benefits, merely because his shift has not yet ended.

While it is entirely acceptable to have warmed up his car before driving home, and it appears to have been customarily done with the permission of his supervisor, Mitchell's act was one of personal convenience and had no connection to his obligations as a State Police Officer. We must reject Mitchell's contention that his actions were similar to "eating meals" or "using the restroom" while on duty, if injuries incurred during such acts are indeed compensable under the Act.[3] These activities, unlike Mitchell's, are necessary functions every state police officer must perform during the course of his or her shift.

Accordingly, we affirm the order of the Commissioner.

### ORDER

AND NOW, this 31 st day of March, 1999, the order of the Pennsylvania State Police Commissioner, in the above-captioned matter, is hereby affirmed.

---

**3.** We know of no cases that have decided this question, and we do not decide it herein.